1  John A. Micheaels (005917)
2  David S. Shughart (015299)
   Beale, Micheaels, Slack & Shughart, P.C.
3  7012 North 18th Street
   Phoenix, Arizona 85020
4  602-285-1444
5  jam@bmsslaw.com
   dshughart@bmsslaw.com
6  Attorneys for Defendants/Counterclaimants

7              **UNITED STATES DISTRICT COURT**

8              **FOR THE DISTRICT OF ARIZONA**

9   James River Insurance Company,          ) No. 2:20-CV-01052-DGC
                                            )
10                   Plaintiff,             )
                                            )
11  vs.                                     )  **ANSWER AND COUNTERCLAIM**
                                            )  **IN INTERVENTION**
12  Wendee Thompson, an incapacitated       )
    adult, by and through Mildred Salter,   )
13  her mother and legal guardian and       )
    Joseph Thompson, her father; Mildred    )
14  Salter, individually and on behalf of   )
    Wendee Thompson; and Joseph             )
15  Thompson, individually and on behalf    )
    of Wendee Thompson,                     )
16                                          )
                                            )
17           Defendants/Counterclaimants.   )
                                            )
18  ───────────────────────────────────    )

19         Defendants and counterclaimants Wendee Thompson, Mildred Salter, and Joseph

20  Thompson (collectively, "Defendants/Counterclaimants"), as assignees of all claims

21  Defendant Phillip E. Gear, M.D. ("Dr. Gear") has against James River Insurance Company

22  ("James River"), hereby answer the allegations in James River's Complaint and allege the

23  following counterclaims:

24  / / /

25  / / /

26  / / /

## ANSWER

Defendants/Counterclaimants, as the assignees of Dr. Gear's claims under the Settlement Agreement and Assignment of Claims, hereby answer James River's Complaint for Declaratory Relief and Damages as follows:

### Nature of Action

1. Answering ¶ 1 of James River's Complaint (all following paragraph references are to James River's Complaint for Declaratory Relief and Damages (Doc. 1) unless specified otherwise), Defendants/Counterclaimants admit James River seeks a declaratory judgment under 28 U.S.C. §2201 *et seq.* establishing there is no coverage for Dr. Gear for a lawsuit filed against Dr. Gear and other defendants in the Underlying Action as defined in ¶ 8 of James River's Complaint. Defendants/Counterclaimants deny the remaining allegations in ¶1 including James River's characterization of what the Underlying Action involves.

### Jurisdiction and Venue

2. Defendants/Counterclaimants admit the allegations in ¶ 2.

3. Defendants/Counterclaimants admit the allegations in ¶ 3.

4. Defendants/Counterclaimants lack information or information sufficient to form a belief about the truth of the allegations in ¶ 4, and they are therefore denied.

### The Parties

5. Defendants/Counterclaimants admit the allegations in ¶ 5.

### The Underlying Action

6. Defendants/Counterclaimants admit the allegations in ¶ 6 upon information and belief.

7. Defendants/Counterclaimants admit the allegations in ¶ 7 upon information and belief.

8. Defendants/Counterclaimants admit the allegations in ¶ 8.

9.     Defendants/Counterclaimants admit the allegations in ¶ 9.

10.    Defendants/Counterclaimants admit the allegations in ¶ 10.

11.    Defendants/Counterclaimants admit the allegations in ¶ 11.

12.    Defendants/Counterclaimants admit the allegations in ¶ 12.

13.    Defendants/Counterclaimants admit the allegations in ¶ 13.

14.    Defendants/Counterclaimants admit the allegations in ¶ 14 upon information and belief, and affirmatively allege James River mischaracterizes ¶¶ 86 and 90 of the Underlying Complaint and deny any such characterizations by James River. Defendants/Counterclaimants further allege the Underlying Complaint must be read in its entirety.

15.    Defendants/Counterclaimants deny the allegations in ¶ 15, which purport to characterize the allegations in ¶¶ 152-158 of the Underlying Complaint, which speak for themselves, and affirmatively allege the Underlying Complaint must be read in its entirety. Further, and contrary to James River's allegations and/or inferences in ¶ 15, Defendants/Counterclaimants affirmatively allege the Underlying Complaint sets forth one count, or cause of action, against Dr. Gear and it is for medical negligence.

16.    Answering ¶ 16, Defendants/Counterclaimants admit only that ¶ 157 of the Underlying Complaint alleges "As a proximate result of the negligent and other tortious conduct of Defendant Dr. Gear and Just for Kids, P.L.C., Plaintiff Wendee suffered repeated, nonconsensual sexual assault and exploitation, and eventual impregnation." Defendants/Counterclaimants deny the remaining allegations in ¶ 16 and affirmatively allege the Underlying Complaint must be read in its entirety.

17.    Answering ¶ 17, Defendants/Counterclaimants admit only that ¶ 158 of the Underlying Complaint alleges "As a further proximate result of the negligent and other tortious conduct of Defendants Dr. Gear and Just for Kids, P.L.C., Plaintiffs suffered and experienced the harm, injuries and damages as alleged herein."

Defendants/Counterclaimants deny the remaining allegations in ¶ 17 and affirmatively allege the Underlying Complaint must be read in its entirety.

### The James River Policy

18.     Defendants/Counterclaimants admit the allegations in ¶ 18.

19.     Defendants/Counterclaimants admit the allegations in ¶ 19.

20.     Answering ¶ 20, Defendants/Counterclaimants admit the James River Policy identified in ¶ 18 of the Complaint (the "Policy") identifies the Medical Professional Liability Policy section as HC0004US 02-07 at the bottom of each of the seven pages of said provision. Defendants/Counterclaimants admit ¶ 20 recites portions, but not all, of the Policy language in the Medical Professional Liability Policy. Defendants/Counterclaimants are without information sufficient to form a belief as to all other allegations in ¶ 20 and therefore deny same. Defendants/Counterclaimants affirmatively allege all claims against Dr. Gear in the Underlying Action are fully and unequivocally covered pursuant to the insuring agreement quoted in ¶ 20. Defendants/Counterclaimants further affirmatively allege that none of the exclusions partially quoted in ¶ 20 apply and/or serve to vitiate coverage.

21.     Answering ¶ 21, Defendants/Counterclaimants admit the Policy includes a Combined Policy Exclusions Endorsement identified at the bottom of each of the three pages of said provision as HC2200US 07-06 and that ¶ 21 recites some, but not all, of the Policy language in the Combined Policy Exclusions Endorsement. Defendants/Counterclaimants are without information sufficient to form a belief as to all other allegations in ¶ 21 and therefore deny same.

### Count I- No Coverage Under The Sexual Acts Exclusion

22.     Defendants/Counterclaimants incorporate by reference each of their responses to the foregoing paragraphs as if set forth fully and at length herein.

23.     Answering ¶ 23, Defendants/Counterclaimants admit only that the Policy has an exclusion in the Medical Professional Liability Policy section designated as form HC0004US 02-07 that reads:

> 2.     Exclusions
>
> This Policy does not apply to any "claim":
>
> . . . . .
>
> e.     Based on or directly or indirectly arising out of or resulting from any sexual act or acts including but not limited to undue familiarity, excessive influence or power, molestation, assault, battery or imprisonment, including "claims" of improper or negligent hiring, employment or supervision, failure to protect or warn the other party, failure to prevent the sexual abuse and/or physical abuse, failure to prevent assault and battery and failure to discharge the employee;

Defendants/Counterclaimants deny all other allegations in ¶ 23.

24.     Answering ¶ 24, Defendants/Counterclaimants admit only that the Policy has the exclusion quoted in ¶ 23 of this Answer, and deny all other allegations in ¶ 24.

25.     Defendants/Counterclaimants deny the allegations in ¶ 25.

26.     Defendants/Counterclaimants deny the allegations in ¶ 26.

### Count II- No Coverage Under Criminal Act Exclusion

27.     Defendants/Counterclaimants incorporate by reference each of their responses to the foregoing paragraphs as if set forth fully and at length herein.

28.     Answering ¶ 28, Defendants/Counterclaimants admit only that the Policy has an exclusion in the Medical Professional Liability Policy section designated as form HC0004US 02-07 that reads:

> 2.     Exclusions
>
> This Policy does not apply to any "claim":

j.    Based on or directly or indirectly arising out of or resulting from:

(1)    Any act committed with knowledge of its wrongful nature or with the intent to cause damage;

. . .

(3)    Any criminal, fraudulent, or dishonest act;

Defendants/Counterclaimants deny all other allegations in ¶ 28.

29.    Defendants/Counterclaimants deny the allegations in ¶ 29 insofar as James River mischaracterizes the allegations in ¶¶ 86, 90, 125, and 127 of the Underlying Complaint, and affirmatively allege that Wendee was repeatedly sexually assaulted and raped at Hacienda and that the Underlying Complaint does not allege that Dr. Gear committed any sexual assault or rape.

30.    Defendants/Counterclaimants admit the allegations in ¶ 30 upon information and belief and affirmatively allege Dr. Gear has not been charged with any crimes or conduct otherwise falling within the ambit of the exclusion quoted, in part, in ¶ 28 of this Answer.

31.    Defendants/Counterclaimants deny the allegations in ¶ 31.

### **Count III- No Coverage Based on Retroactive Date**

32.    Defendants/Counterclaimants incorporate by reference each of their responses to the foregoing paragraphs as if set forth fully and at length herein.

33.    Answering ¶ 33, Defendants/Counterclaimants admit only that the Policy has an insuring agreement of the Medical Professional Liability Policy section designated as form HC0004US 02-07 that reads:

1.    Insuring Agreement

a.    We will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to pay as "damages" because of "injury" arising out of "professional services" rendered or that should have been rendered provided that:

- 6 -

. . . . .

      (2)     The "damages" arise out of a "professional service" that occurs subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the Policy; and…..

Defendants/Counterclaimants deny all other allegations in ¶ 33.

34.    Defendants/Counterclaimants admit the allegation in ¶ 34.

35.    Defendants/Counterclaimants admit the allegation in ¶ 35.

36.    Defendants/Counterclaimants deny the allegations in ¶ 36 and affirmatively allege James River mischaracterizes the allegations in ¶¶ 66 and 67 of the Underlying Complaint.

37.    Defendants/Counterclaimants deny the allegations in ¶ 37 and affirmatively allege the Underlying Complaint does not allege any damage arising out of any professional service occurring on or before March 13, 2009.

**Count IV- No Coverage Under Prior Professional Services Exclusion**

38.    Defendants/Counterclaimants incorporate by reference each of their responses to the foregoing paragraphs as if set forth fully and at length herein.

39.    Answering ¶ 39, Defendants/Counterclaimants admit only that the Policy has an exclusion in the Medical Professional Liability Policy section designated as form HC0004US 02-07 that reads:

2.    Exclusions

This Policy does not apply to any "claim":

. . . . .

a.    Based on or directly or indirectly arising out of or resulting from:

      (1)     A "professional service" rendered prior to the effective date of the first Policy Period in a series of uninterrupted renewal policies issued by us, if any insured knew or could have

- 7 -

reasonably foreseen that the "professional service" could give rise to a "claim";

Defendants/Counterclaimants deny all other allegations in ¶ 39.

40. Defendants/Counterclaimants admit the allegation in ¶ 40, and affirmatively allege that the Policy Retroactive Date is March 13, 2009.

41. Defendants/Counterclaimants admit the allegation in ¶ 41.

42. Defendants/Counterclaimants deny the allegations in ¶ 42 and affirmatively allege James River mischaracterizes the allegations in ¶¶ 66 and 67 of the Underlying Complaint. Intervenors further allege the Underlying Complaint must be read in its entirety.

43. Defendants/Counterclaimants admit the allegation in ¶ 43.

44. Defendants/Counterclaimants admit the allegation in ¶ 44.

45. Defendants/Counterclaimants deny the allegations in ¶ 45, and affirmatively allege the Underlying Complaint does not claim Dr. Gear knew or could have reasonably foreseen that any professional services could give rise to a claim prior to March 13, 2009 or March 13, 2018.

### Count V- No Coverage Under False Imprisonment Exclusion

46. Defendants/Counterclaimants incorporate by reference each of their responses to the foregoing paragraphs as if set forth fully and at length herein.

47. Answering ¶ 47, Defendants/Counterclaimants admit only that the Policy has an exclusion in the Medical Professional Liability Policy section designated as form HC0004US 02-07 that reads:

2. Exclusions

This Policy does not apply to any "claim":

. . . . .

n. Based on or directly or indirectly arising out of or resulting from:

. . . . .

    (4)       False arrest, detention or imprisonment or malicious prosecution or the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies;

Defendants/Counterclaimants deny all other allegations in ¶ 47.

48.    Defendants/Counterclaimants deny the allegations in ¶ 48 insofar as and affirmatively allege James River mischaracterizes the allegations in ¶ 157 of the Underlying Complaint. Defendants/Counterclaimants further allege the Underlying Complaint must be read in its entirety.

49.    Defendants/Counterclaimants deny the allegations in ¶ 49, and affirmatively allege the Underlying Complaint does not allege any conduct by Dr. Gear that would trigger the alleged false imprisonment exclusion relative to the claims in the Underlying Action.

### Count VI- No Coverage For Punitive Damages

50.    Defendants/Counterclaimants incorporate by reference each of their responses to the foregoing paragraphs as if set forth fully and at length herein.

51.    Defendants/Counterclaimants admit the allegations in ¶ 51, and affirmatively allege the Policy language quoted by James River is incomplete and does not fully set forth the applicable language in the Policy's Insuring Agreement.

52.    Defendants/Counterclaimants admit the Policy defines "Damages" in Section VII- Definitions as follows:

    2.    "Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a "claim" to which this policy applies. "Damages" does not include equitable or non-pecuniary relief, punitive damages or exemplary damages, or the amount of any multiplied damages awarded that is in excess of the damage award so multiplied.

Defendants/Counterclaimants deny all other allegations in ¶ 52.

53.     Defendants/Counterclaimants admit the Policy excludes coverage for punitive or exemplary damages, and deny all other allegations in ¶ 53.

**Affirmative Defenses and Other Assertions**

54.     James River's claims fail, in whole or in part, to state a claim upon which relief may be granted.

55.     James River's claims are barred by the doctrines of estoppel and/or waiver.

56.     Defendants/Counterclaimants deny any allegation, claim, or statement in James River's Complaint that is not specifically admitted herein or otherwise plead to.

57.     Defendants/Counterclaimants reserve the right to raise additional affirmative defenses revealed during discovery including, but not limited to, those listed in F.R.C.P., Rule 8(c).

58.     Defendants/Counterclaimants demand a trial by jury of any issue triable of right by a jury.

**James River's Requested Relief**

Defendants/Counterclaimants deny that James River is entitled to any of the relief it seeks in this lawsuit both as a matter of law and fact.

WHEREFORE, having fully answered James River's Complaint, Defendants/Counterclaimants respectfully request this Court:

A.     Deny the relief requested by James River, and enter declaratory judgment against James River, including a declaration that the Policy provides coverage for the subject claims;

B.     Award all of the relief requested by Defendants/Counterclaimants in this Answer and set forth in the Counterclaim below;

C.     Award Defendants/Counterclaimants their attorney's fees and costs incurred herein; and

D. Order all such other relief as the Court deems just and proper under the circumstances.

## COUNTERCLAIMS

### Parties and Jurisdiction

1. Wendee Thompson ("Wendee") is and has been an incapacitated and vulnerable adult who resided in Maricopa County, Arizona at all times relevant hereto.

2. Mildred Salter ("Mildred") is the mother of and legal guardian for Wendee. Joseph Thompson ("Joseph") is the father of Wendee. Mildred and Joseph resided in Arizona at all times relevant hereto.

3. Upon information and belief, James River is an Ohio corporation with its principal place of business in Virginia. James River is and was authorized to conduct and conducting business in Maricopa County, Arizona at all times relevant hereto. James River issued a medical professional liability insurance policy (the "Policy") to Dr. Gear as the Named Insured, bearing Policy No. 00036832-9 effective from March 13, 2018 to March 13, 2019.

4. Dr. Gear is and was a resident of Maricopa County, Arizona at all times relevant hereto.

5. Just for Kids, P.L.C. ("JK") is and was a professional liability company authorized to conduct and conducting business in Maricopa County, Arizona at all times relevant hereto.

6. Defendants/Counterclaimants demand a trial by jury of any issue triable of right by a jury.

7. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1332, as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship amongst the parties.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Defendants/Counterclaimants and Dr. Gear are residents of the State of Arizona and a substantial part of the events or omissions giving rise to the claim that gives rise to this action occurred in Maricopa County, Arizona. JK is an Arizona professional liability company. James River is licensed to conduct and did conduct insurance business in Maricopa County, Arizona at all relevant times.

9.      Dr. Gear has assigned to Defendants/Counterclaimants all claims he has against James River related to the issues in this litigation in a Settlement Agreement and Assignment of Claims signed by Dr. Gear on August 17, 2020. The Settlement Agreement and Assignment of Claims is attached to the Motion to Intervene, and its contents are hereby incorporated by reference. (Doc. 17-2.)

10.     Defendants/Counterclaimants, as the assignees of Dr. Gear's claims against James River, seek an adjudication of rights and a declaratory judgment in Defendants/Counterclaimants' favor on the issue of insurance coverage provided by the Policy and James River's liability for the full judgment that will be entered against Dr. Gear in the action pending in Maricopa County Superior Court designated as CV2019-057584 (the "Underlying Action") under the provisions of 28 U.S.C. § 2201 *et seq.*

11.     Defendants/Counterclaimants, as the assignees of Dr. Gear's claims against James River, further seek damages against James River for breach of contract, the tort of third-party bad faith, and punitive damages, which include the full amount of the judgment that will be entered in the Underlying Action, interest, attorney's fees, costs, and punitive or exemplary damages.

## **Allegations Common to All Counts**

12.     Defendants/Counterclaimants incorporate by reference the foregoing paragraphs as if set forth fully and at length herein.

13.     On December 24, 2019, Defendants/Counterclaimants filed the Underlying Action against Dr. Gear, JK, and other defendants in Maricopa County Superior Court.

14.     In 2018, Wendee was repeatedly sexually assaulted and exploited and ultimately impregnated while a resident and patient at the Hacienda Healthcare ICF-ID. Wendee gave birth to a child in 2018.

15.     Joseph and Mildred have been together 32 years and have seven children, one of whom is Wendee. Wendee was born in 1989 and lived the first few years of her life on the San Carlos Apache Reservation with Joseph, Mildred, and her siblings. Wendee developed seizures at an early age, and was diagnosed with idiopathic encephalopathy with psychomotor retardation and cortical blindness. Wendee's aforementioned diagnoses, conditions, and disabilities are permanent.

16.     On May 15, 1992, Wendee became a resident and patient of Hacienda de los Angeles, now known as Hacienda Healthcare ICF-ID ("Hacienda"), located at 1402 E. South Mountain Avenue in Phoenix, Arizona. Wendee resided at Hacienda from May 1992 through December 2018, during which time she was unable to protect herself from abuse, neglect, and exploitation by others because of her physical and mental impairments and disabilities.

17.     Dr. Gear provided and was responsible to provide primary care, physician care, treatment, and medical services to Wendee from May 15, 1992 through September 17, 2018. There was a period of time in 2002 that Dr. Gear did not act in that capacity due to a health issue of his.

18.     At all times relevant to providing primary care, physician care, treatment, and medical services to Wendee, Dr. Gear acted individually and did not act on behalf of or as an agent or employee for any other person or entity, including, but not limited to JK.

19. Dr. Gear asserts JK has no legal responsibility for Defendants/Counterclaimants' claims ("Claims") made against him in the Underlying Action.

20. Since 2002, Mildred and/or Joseph requested Wendee be cared for by female care provider staff only. These requests for female care provider staff only are memorialized in numerous Individual Support Plans ("ISPs") from at least 2009 through September 17, 2018. In all the aforementioned ISPs, "Female staff only" is requested and specifically required per the State of Arizona's DES/DDD form that is part of the ISP and entitled "ISP- Rights, Health and Safeguards." In most, if not all, of the aforementioned ISPs, one of Wendee's identified risks is "Lacks Stranger Danger skills; Risk of Exploitation."

21. Unbeknownst to Joseph and Mildred, male care provider staff were assigned to provide care for Wendee while alone, as documented in Hacienda's chart. From March 13, 2009 through September 17, 2018, on numerous occasions Wendee received care and services from male Hacienda care provider staff (*e.g.,* LPNs, respiratory technicians, transport providers for outings, etc.), who were not accompanied by female staff, as required by Wendee's ISPs and the standard of care.

22. Hacienda hired Licensed Practical Nurse Nathan Sutherland (sometimes referred to herein as "LPN Sutherland") as an employee in 2012. LPN Sutherland's first day working for Hacienda as a licensed practical nurse was January 23, 2012. Hacienda first assigned LPN Sutherland to provide care for Wendee on January 26, 2012. From 2012 through 2018, Hacienda's records document that LPN Sutherland provided care for Wendee, by himself and unaccompanied by female staff, on hundreds of occasions.

23. DNA test results and other evidence gathered by the Phoenix Police Department have resulted in the State of Arizona charging LPN Sutherland with sexually assaulting and impregnating Wendee.

24.     Defendants/Counterclaimants generally allege in the Underlying Action, a partially redacted copy of which is attached hereto as Exhibit A, the following:

1.     Dr. Gear did not timely and properly review Wendee's records at Hacienda, including but not limited to her ISPs, during 2018, in violation of the applicable standard of care.

2.     Dr. Gear did not perform and document performing monthly examinations of Wendee in 2018, in violation of the applicable standard of care.

3.     Had primary care physician Dr. Gear timely and properly reviewed Wendee's records at Hacienda in 2018, including but not limited to her ISPs, he would have and should have recognized that all times relevant hereto Wendee was required to have only female care provider staff and that Wendee was being assigned multiple male care provider staff, who were providing care and services for Wendee without being accompanied by female staff in violation of her ISPs and the applicable standard of care.

4.     Had Dr. Gear complied with the applicable standard of care, including but not limited to taking proper steps to ensure Wendee was not cared for by male care provider staff and/or not cared for by male care provider staff unaccompanied by female staff, Wendee would not have been sexually assaulted and raped in 2018 while a patient and resident at Hacienda.

5.     Had Dr. Gear conformed with the applicable standard of care and performed the required, appropriate examinations and assessments of Wendee during 2018 and/or properly reviewed her Hacienda records in 2018, including but not limited to her medical chart and history of menstrual cycles and the absences thereof, he would have and should have diagnosed Wendee's pregnancy prior to September 18, 2018.

6.     Dr. Gear negligently failed to provide Wendee with required medical care, treatment and services in 2018, including but not limited to failing to timely diagnose and ensure proper treatment for Wendee's pregnancy.

7.     Dr. Gear violated the applicable standards of care in 2018, including but not limited to, (1) by failing to take required steps to ensure that Wendee was provided care, treatment, and services by female care provider staff only and/or in failing to take steps to ensure that female staff were present anytime when Wendee was cared for and/or attended to by male care providers, (2) by failing to diagnose Wendee's pregnancy, (3) by failing to provide

appropriate and reasonable prenatal care for Wendee, and (4) by failing to provide appropriate care and treatment and/or in providing inappropriate care and treatment to Wendee.

25. Defendants/Counterclaimants' Complaint alleges the aforementioned medical negligence of Dr. Gear in 2018 resulted in Wendee's pregnancy not being timely diagnosed, which caused her to endure the pregnancy and delivery of her baby without proper prenatal care and medical treatment, and to suffer repeated sexual assault. Defendants/Counterclaimants' Complaint alleges that had Dr. Gear timely and properly diagnosed Wendee's pregnancy, she likely would not have been subjected to rape and sexual assault, and/or continued rape and sexual assault, prior to December 2018. Defendants/Counterclaimants' alleged damages resulting from the aforementioned medical negligence also include but are not limited to the following:

1. Wendee suffered inadequate prenatal care and medical treatment for her pregnancy, serious and permanent physical and emotional damage, repeated sexual assaults that caused permanent scarring, physical pain, and emotional harm; and

2. Mildred and Joseph suffered and continue to suffer loss of consortium, as well as physical and emotional injury.

Defendants/Counterclaimants' Complaint includes a claim of punitive damages against Dr. Gear and JK.

26. The Arizona Medical Board issued an Order for Surrender of License and Consent ("Order") to Dr. Gear on November 8, 2019. Dr. Gear consented to the entry of said Order.

27. James River provided Dr. Gear and JK with insurance coverage for Defendants/Counterclaimants' claims through the Policy, a copy of which is attached hereto as Exhibit B, which has a stated policy period of March 13, 2018 through March 13, 2019 and affords liability indemnity limits of $1,000,000 for each claim and an aggregate of $3,000,000 for all claims. The Policy has a stated retroactive date of March 13, 2009,

when Dr. Gear began purchasing the medical professional liability insurance from James River. The Policy provides insurance coverage for Defendants/Counterclaimants' claims against Dr. Gear in the Underlying Action under Arizona law. The medical malpractice claim unequivocally implicates coverage under the insuring clause in the Policy (quoted in ¶ 20 of James River's Complaint for Declaratory Relief and Damages). No exclusions in the Policy apply to vitiate coverage for the medical malpractice claim. Furthermore, Dr. Gear had a reasonable expectation of coverage for Defendants/Counterclaimants Claims. James River's coverage denial is contrary to any reasonable interpretation of the Policy language under Arizona law, including how insurance policies are to be interpreted liberally in favor of coverage, the well-established Concurrent Causation Rule, public policy, and the Doctrine of Reasonable Expectations.

28. Dr. Gear purchased the Policy through Allan Kirik of Worldwide Facilities, LLC and Barbara Siegfried of AON/Affinity Insurance Services, Inc. As a part of purchasing the Policy, Dr. Gear provided all relevant information regarding his occupation as a primary care physician and his need for liability insurance to provide full coverage for any and all of his medical negligence as a primary care physician.

29. As a primary care physician throughout his career and through December 2018, the applicable standard of care required Dr. Gear to provide and Dr. Gear did provide medical advice, care, and services to his patients regarding medical conditions based on, arising out of, and resulting from a sexual act or sexual acts, whether consensual or non-consensual. Specifically, but without limitation, Dr. Gear was required to provide and did provide medical advice, care, and services to patients who (1) were sexually active, (2) required birth control, (3) had become pregnant, (4) required prenatal care, (5) were at risk for contracting or had become infected with sexually transmitted diseases, and (6) had been sexually and/or physically abused.

30. Dr. Gear purchased the Policy with a reasonable expectation that it would provide professional liability insurance for claims made against him for medical negligence related to medical advice, care, and services he was required by the standard of care to provide and did provide to his patients, including, but not limited to, medical advice, care, and services for patients related to medical conditions based on or directly or indirectly arising out of or resulting from any sexual act or sexual acts.

31. Dr. Gear would not have purchased the Policy if he had been advised it would not provide liability insurance coverage for claims against him for medical negligence arising from medical advice, care, and services he was required by the standard of care to provide and did provide to his patients, including, but not limited to, medical advice, care, and services for patients regarding medical conditions based on or directly or indirectly arising out of or resulting from any sexual act or sexual acts.

32. Dr. Gear does not recall receiving the Policy, or a copy of it, and was never advised, in any manner, that the Policy had the exclusions set forth in the letters from Claims Specialist Misty Anderson dated January 23, 2020, February 19, 2020, and March 18, 2020, including but not limited to Exclusion (e) pertaining to sexual acts.

33. Defendants/Counterclaimants' counsel placed Dr. Gear and JK on notice of Defendants/Counterclaimants' Claims on January 30, 2019.

34. Dr. Gear and JK reported the notice of claims in writing to James River prior to March 13, 2019.

35. Defendants/Counterclaimants' counsel made a confidential, one-time, time-sensitive, $1,000,000 policy limit settlement offer to settle in full all claims against Dr. Gear and JK in a February 12, 2020 letter to counsel for Dr. Gear.

36. James River sent Dr. Gear a letter on February 19, 2020. In this letter, Claims Specialist Misty Anderson stated, "To be clear, James River will continue providing you and JK with a defense under a complete reservation of rights, but we cannot accept

Thompson's [sic] recent settlement demand or pay any judgment entered against you or JK because coverage is likely barred under the policy's Sexual Assault Exclusion." Claims Specialist Misty Anderson further stated in this letter, "James River will not accept Thompson's [sic] recent settlement demand and will not indemnify you or JK from any judgment entered in Thompson's [sic] favor because no one has attempted to explain why James River's defenses to coverage do not apply."

37.     Upon request and the corresponding representation from defense counsel hired by James River that "we are in the process of preparing an evaluation to the carrier," Intervenors' counsel extended the deadline for accepting the time-sensitive, $1,000,000 policy limit settlement to March 20, 2020.

38.     Dr. Gear and JK, through personal counsel Kevin Barrett, demanded that James River withdraw the reservation of rights and timely accept Defendants/Counterclaimants' policy limit settlement offer in a March 13, 2020 letter.

39.     James River, through Claims Specialist Misty Anderson, rejected the requests of Dr. Gear and JK in a March 18, 2020 letter and reiterated some of the bases for the reservation of rights, its refusal to settle for the $1 million Policy limit, and stated:

> We hope you can appreciate that James River accordingly cannot accept the pending settlement demand. We are, however, open to resolving this matter for an amount that gives meaning to our significant defenses to coverage. We believe that if Dr. Gear and JK join us in explaining those coverage issues to Wendee's family that this matter will be better postured for resolution.

40.     Defendants/Counterclaimants and Dr. Gear agreed to enter into a Settlement Agreement and Assignment of Claims.

41.     Prior to entering into the Settlement Agreement and Assignment of Claims, Defendants/Counterclaimants provided James River with notice of this potential agreement and provided a draft copy of it in a letter dated May 29, 2020.

42.     Notwithstanding said notice, James River refused to withdraw its reservation of rights.

43.     Defendants/Counterclaimants and Dr. Gear subsequently entered into the Settlement Agreement and Assignment of Claims.

44.     Defendants/Counterclaimants voluntarily dismissed JK from the Underlying Action on August 24, 2020.

45.     Pursuant to the Settlement Agreement and Assignment of Claims, Defendants/Counterclaimants and Dr. Gear have requested that the court in the Underlying Action conduct a reasonableness hearing as soon as practicable.

46.     By virtue of the assignments in the Settlement Agreement and Assignment of Claims, the Defendants/Counterclaimants are necessary and indispensable parties to this action pursuant to F.R.C.P., Rule 19.

**Count One: Request for Declaratory Relief**

47.     Defendants/Counterclaimants incorporate by reference the foregoing paragraphs as if set forth fully and at length herein.

48.     Defendants/Counterclaimants, as the assignees of Dr. Gear's claims against James River, seek a judicial declaration of rights and judgment under the provisions of 28 U.S.C. § 2201, *et seq.* in his favor regarding the insurance coverage disputes at issue.

49.     Defendants/Counterclaimants respectfully request that this Court declare that James River improperly denied coverage, wrongly refused to withdraw its reservations of rights including the exclusion related to sexual acts, breached its duty to defend and indemnify Dr. Gear in the Underlying Action, and failed to settle for the applicable Policy limit when afforded the opportunity.

50.     Defendants/Counterclaimants respectfully request that this Court declare that James River is liable for the full judgment that will be entered against Dr. Gear in the Underlying Action and order that James River pay to Defendants/Counterclaimants the full

judgment in the Underlying Action plus applicable attorney's fees, costs, interests and any other appropriate amounts.

## Count Two: Breach of Contract

51.     Defendants/Counterclaimants incorporate by reference the foregoing paragraphs as if set forth fully and at length herein.

52.     James River owed Dr. Gear a defense and indemnity against the claims in the Underlying Action.

53.     Pursuant to the Policy, James River owed Dr. Gear the duty of appropriately applying the Policy provisions and giving Dr. Gear's interests and its own interests equal consideration.

54.     James River breached the Policy by violating the aforementioned Policy in multiple regards including, but not limited to, improperly denying coverage, improperly reserving rights to deny coverage, improperly refusing to withdraw its reservations of rights, improperly conditioning its defense of Dr. Gear, refusing to settle Defendants/Counterclaimants' claims for the Policy limit of $1 million, and failing to give equal consideration to Defendants/Counterclaimants' Policy limit settlement offer.

55.     James River's aforementioned contractual breaches of the Policy render James River liable for the full judgment that will be rendered in the Underlying Action, plus attorney's fees, interest, and costs.

## Count Three: Tort of Bad Faith

56.     Defendants/Counterclaimants incorporate by reference the foregoing paragraphs as if set forth fully and at length herein.

57.     There is an implied duty of good faith and fair dealing in every insurance contract under Arizona law, including the Policy.

58.     The implied covenant of good faith and fair dealing required and continues to require James River to act reasonably and give Dr. Gear's interests the same, equal

consideration as its own interests in all regards, including with respect to considering Defendants/Counterclaimants' $1 million settlement offer.

59.     James River breached the duty of good faith and fair dealing and committed the tort of third-party bad faith in multiple regards including, but not limited to: refusing and failing to settle for the applicable Policy limit as demanded by Defendants/Counterclaimants and Dr. Gear, improperly reserving its rights to deny coverage under the Policy, denying coverage under the Policy, failing to recognize and honor Dr. Gear's reasonable expectations of coverage, failing to reasonably investigate Defendants/Counterclaimants' claims, failing to give the same, or equal, consideration to Dr. Gear's interests as it gave its own interests when evaluating Defendants/Counterclaimants' demand for payment of the Policy limit, improperly attempting to save itself money to the extreme risk and detriment of Dr. Gear, improperly conditioning its defense of Dr. Gear, and seeking a judicial determination that Dr. Gear is obligated to pay to James River the attorney's fees expended defending Dr. Gear in the Underlying Action.

60.     The judgment that will be entered in the Underlying Action is a direct and proximate result of James River's aforementioned, multi-faceted bad faith.

61.     As a result of its aforementioned, multi-faceted bad faith, James River is liable for the full amount of the judgment that will be entered in the Underlying Action, as well as other tort damages including, but not limited to, attorney's fees, costs, and interest.

62.     James River continues to breach the duty of good faith and fair dealing and commit the tort of third-party bad faith through some of the aforementioned conduct, including but not limited to, improperly conditioning its defense of Dr. Gear and seeking a judicial determination that Dr. Gear is obligated to pay to James River the attorney's fees expended defending Dr. Gear in the Underlying Action.

63. James River's aforementioned, multi-faceted bad faith and continuing bad faith constitutes clear and convincing evidence that James River (1) acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injury Dr. Gear and/or (2) consciously pursued a course of conduct knowing that it created a substantial risk of harm to Dr. Gear.

64. James River's aforementioned, multi-faceted bad faith and continuing bad faith warrants the imposition of punitive damages.

WHEREFORE, pursuant to these counterclaims, Defendants/Counterclaimants respectfully pray for judgment and request relief against James River as follows:

A. For a judicial declaration that the Policy provides coverage for the subject Claims and that James River breached its contractual obligations under the Policy, including its duties to defend, indemnify, and settle within Policy limits;

B. For a judicial declaration that James River committed and continues to commit the tort of third-party bad faith, including its duties to defend, indemnify, extend equal consideration to Dr. Gear's interests, and settle with the Policy limit when afforded the opportunity;

C. For a judicial declaration that James River is liable for the full judgment in the Underlying Action as well as attorney's fees, costs and interest;

D. For all contract damages arising from James River's aforementioned breaches of the Policy in an amount to be proven at trial;

E. For all tort damages arising from James River's aforementioned, multi-faceted bad faith in an amount to be proven at trial;

F. For punitive damages against James River in an amount to be determined by the jury sufficient to punish James River and other insurance companies from engaging in such conduct in the future;

1    G.    For costs, attorney's fees, prejudgment interest, and post-judgment interest;
2    and

3    H.    All such other relief as the Court deems just and proper under the
4    circumstances.

5    DATED this 2nd day of October, 2020.

6                                          BEALE, MICHEAELS, SLACK &
                                           SHUGHART
7

8
                                      By: /s/ David S. Shughart
9                                          John A. Micheaels, Esq.
                                           David S. Shughart, Esq.
10                                         7012 North 18th Street
                                           Phoenix, Arizona 85020
11                                         Attorneys for Defendants/Counterclaimants
12

13

14

15                         **CERTIFICATE OF SERVICE**

16        I hereby certify that on this 2nd day of October 2020, I electronically transmitted
17   the foregoing document via the CM/ECF System to the Clerk's office for filing and
     transmittal of a copy to the following CM/ECF registrants:
18
     Jasmina Richter
19   SANDERS & PARKS, P.C.
20   3030 North Third Street, Suite 1300
     Phoenix, AZ 85012-3099
21   jasmina.richter@sandersparks.com
     Attorneys for Plaintiff James River Insurance Company
22

23   Joel McNabney, Esq.
     Clyde & Co
24   1221 Brickell Ave., Suite 1600
     Miami, FL 33131
25   Joel.mcnabney@clydeco.us

26

1  Kevin C. Barrett
2  BARRETT & MATURA, P.C.
   8925 E. Pima Center Parkway
3  Suite 215
   Scottsdale, AZ 85258
4  kbarrett@barrettmatura.com
5  Attorneys for Dr. Gear and Just for Kids, P.L.C.

6  */s/ Donna Paradis*