Joel L. McNabney (*admitted pro hac vice*)
**CLYDE & CO US LLP**
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Phone: (305) 446-2646
Fax: (305) 441-2374
joel.mcnabney@clydeco.us.

Jasmina Richter/Bar No. 024180
**SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
Phoenix, AZ 85012-3099
Direct Phone: (602) 532-5779
Direct Fax: (602) 230-5035
jasmina.richter@sanderparks.com

*Attorneys for Plaintiff James River Insurance Company*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James River Insurance Company,<br><br>        Plaintiff/Counter-Defendant,<br><br>v.<br><br>Wendee Thompson, Mildred Salter, and Joseph Thompson.<br><br>        Defendants/Counter-Plaintiffs. | Case No.: CV-20-1052-PHX-DGC<br><br>**JOINT CASE MANAGEMENT REPORT** |

Plaintiff and Counter-Defendant, JAMES RIVER INSURANCE COMPANY ("James River"), and Defendants and Counter-Plaintiffs, WENDEE THOMPSON, MILDRED SALTER, and JOSEPH THOMPSON (collectively, "Thompsons" or "Defendants" or "Defendants/Counterclaimants") (James River and Thompsons together the "Parties"), pursuant to Fed. R. Civ. P. 26(f) and the Court's order dated May 7, 2021 [D.E. 62], submit the following joint report.

**1. The parties who attended the Rule 26(f) meeting and assisted in developing the Case Management Report.**

All Parties, through counsel, attended the Rule 26(f) meeting and assisted in developing this report.

**2. A list of the parties in the case, including any parent corporations or entities.**

The parties in this case are:

i. James River Insurance Company. James River is a wholly owned subsidiary of James River Group, Inc., which is wholly owned by James River Group Holdings, Ltd. James River Group Holdings, Ltd. is a publicly traded company on NASDAQ under the symbol "JRVR."

ii. Wendee Thompson

iii. Mildred Salter

iv. Joseph Thompson

**3. A short statement of the nature of the case.**

<u>**James River**</u>

This is an insurance coverage action to determine whether the claim Defendants asserted against Phillip E. Gear, M.D. ("Dr. Gear") in an underlying action is covered by James River's policy. On December 24, 2019, Defendants filed suit against Dr. Gear, among others, in the action styled *Wendee Thompson, et al., v. State of Arizona, et al.*, Case No. CV2019-057584, in the Superior Court of the State of Arizona in and for the County of Maricopa. In their complaint in the underlying action, Defendants allege "Wendee was repeatedly sexually assaulted and exploited and ultimately impregnated while a resident and patient at Hacienda Healthcare ICF-ID." (Compl., ¶51.) According to the complaint, Wendee Thompson resided at Hacienda from "September 15, 1992 through December 29, 2018." (¶30.) The complaint alleges Dr. Gear "provided and was responsible to provide primary care, physician care and services to … Wendee from May 15, 1992 through September 17, 2018." (¶49.)

The complaint further alleges that Hacienda hired Nathan Sutherland as a nurse in 2012 and that "Hacienda first assigned … Sutherland to provide care for … Wendee on

January 26, 2012." (¶¶82, 84.) The complaint contends "[f]rom 2012 through 2018, … Sutherland provided care for … Wendee, by himself and unaccompanied by female staff, on hundreds of occasions." (¶85.) The complaint also alleges Sutherland repeatedly "sexually assaulted and raped" her. (¶¶86, 90.) Additionally, according to the complaint, "DNA test results and other evidence gathered by the Phoenix Police Department have resulted in the State charging … Sutherland with sexually assaulting and impregnating … Wendee." (¶86.) The complaint contends that "[h]ad … Dr. Gear … tak[en] proper steps[,] … Wendee would not have been sexually assaulted and raped while a patient and resident at Hacienda." (¶90.)

The complaint asserts one cause of action against Dr. Gear for "medical negligence." (¶¶152-158.) The claim "arise[s] from the acts and omissions of … Dr. Gear in his capacity as a treating physician of … Wendee." (¶153.) The complaint alleges Dr. Gear was negligent by failing to prevent the sexual assault and failing to diagnose the pregnancy. (¶156.) The complaint contends "[a]s a proximate result of the negligent and other tortious conduct of … Dr. Gear and [JK], … Wendee suffered repeated, nonconsensual sexual assault and exploitation, and eventual impregnation." (¶157.)

James River issued a medical professional liability policy to Dr. Gear as the Named Insured, bearing Policy No. 00036832-9 and effective from March 13, 2018 to March 13, 2019. The policy affords liability coverage of $1 million each claim. The policy contains numerous provisions James River contends limit or preclude coverage, including "[t]his Policy does not apply to any 'claim' … [b]ased on or directly or indirectly arising out of or resulting from any sexual act or acts including but not limited to … assault, battery, … [and] failure to prevent assault and battery.

James River filed this action seeking a judicial declaration that, among other things, the sexual acts exclusion precludes coverage. Defendants' allegations of Dr. Gear's failure to prevent the sexual assault and to diagnose the resulting pregnancy cannot exist separate and apart from the sexual assault itself. Had the sexual assault not occurred, there could be no claim for negligently failing to prevent the sexual assault or negligently failing to

diagnose the resulting pregnancy. Accordingly, Defendants' claim against Dr. Gear in the underlying action necessarily derives from and is inextricably linked to the sexual assault and is itself excluded under the policy. *See Am. Family Mut. Ins. Co. v. Verdugo*, 2016 WL 9458582, at *13 (D. Ariz. 2016), *aff'd,* 691 Fed. Appx. 387 (9th Cir. 2017) ("Arizona … courts have consistently held that if conduct expressly excluded by an exclusionary clause occurs, all negligence-based claims deriving from that underlying conduct are also excluded, including those asserted against insureds other than the actor.")

Moreover, James River is seeking to rescind the policy due to a material misrepresentation Dr. Gear made on his application. The application asked Dr. Gear whether he had been diagnosed with or treated for a chronic physician illness. Dr. Gear responded "No" without any further explanation. But Dr. Gear had been diagnosed with transverse myelitis in or around November 2002, which is a chronic illness that significantly affected Dr. Gear's mobility. Dr. Gear had been continuously treating for transverse myelitis since his diagnosis. This chronic illness prevented Dr. Gear from personally examining his patients. Had James Rive known the truth, it would not have issued the policy. Consequently, the policy should be rescinded and declared void.

### Thompsons

This is an insurance coverage, bad faith, and punitive damages case arising from James River's denial of liability insurance coverage for and refusal to settle claims asserted against Phillip E. Gear, M.D. ("Dr. Gear") by the Thompsons in the action styled *Wendee Thompson, et al., v. State of Arizona, et al.*, Case No. CV2019-057584 ("State Court Action).

The Thompsons' medical malpractice claims arose from Dr. Gear's care and treatment of his primary care patient, Wendee. The Thompsons essentially alleged Dr. Gear violated the standard of care for a primary care physician by failing to take steps to ensure Wendee was cared for by female caregivers only and diagnose Wendee's pregnancy. Plaintiffs further alleged damages resulting from the aforementioned medical negligence including: (1) Wendee suffered inadequate prenatal care and medical treatment for her

pregnancy, serious and permanent physical and emotional damage, repeated sexual assaults that caused permanent scarring, physical pain, and emotional harm; and (2) Mildred and Joseph suffered and continue to suffer loss of consortium, as well as physical and emotional injury.

The applicable insurance policy ("Policy") under which James River denied insurance coverage to Dr. Gear is a "Medical Professional Liability." The Policy contains a purported "sexual act" exclusion James River primarily relies upon to deny Dr. Gear coverage. In addition to denying indemnity under the Policy to Dr. Gear under a conditioned reservation of rights, James River refused to settle for the $1 million Policy limit when afforded the opportunity, despite the request of Dr. Gear and his personal counsel. As a result, and after providing notice to James River, Dr. Gear and Plaintiffs entered into the Settlement Agreement and Assignment of Claims ("Agreement"). Plaintiffs and Dr. Gear agreed to the entry of judgment in the total amount of $15 million and agreed to have the State Court conduct a reasonableness hearing to determine a reasonable settlement amount. The parties participated in a reasonableness hearing, which concluded on April 14, 2020. The State Court entered an order on June 10, 2021, approving the Settlement Agreement and Assignment of Claims, deeming it be devoid of fraud or collusion, and determining $15 million to be a reasonable settlement amount.

James River filed a complaint in intervention in the State Court Action, and the Thompsons filed an answer and counterclaim, alleging the same claims for declaratory relief, breach of contract, and bad faith at issue in the case at bar. The Thompsons' counterclaims in the State Court Action are stayed due to the litigation of those claims in this case, now that this Court has lifted the Stay Order. Doc. 55.[1]

---

[1] James River and the Thompsons hereby stipulate that this Court's Order lifting the stay (Doc. 55) effectively vacated the earlier stay order in its entirety (Doc. 43), including the dismissal without prejudice of the counterclaims alleged by the Thompsons. Therefore, those counterclaims will be deemed to have been made and in existence since October 2, 2020 when first filed. Doc. 26.

The Thompsons' position is that there is coverage for the subject claims, that rescission is not warranted as set forth in their responsive pleading, and that the "sexual act" exclusion does not apply to a medical doctor providing treatment to a patient as required by the applicable standard of care. The Thompsons' coverage arguments are based on Arizona law regarding the interpretation of liability insurance policies (including handling of exclusions, ambiguities, illusory coverage, etc.), Arizona's Concurrent Causation Doctrine, public policy related to interpretation of insurance policies, and the Doctrine of Reasonable Expectations. The Thompsons assert James River violated the duty of "equal consideration" and committed the tort of third-party bad faith. The Thompsons allege James River is liable for the judgment that will be entered in the State Court Action. The Thompsons also assert a claim for punitive damages.

**4. The jurisdictional basis for the case, describing the basis for jurisdiction and citing specific jurisdictional statutes.**

Diversity jurisdiction exists under 28 U.S.C. § 1332(a), as there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs. James River is an Ohio corporation with its principal place of business in Virginia. Defendants are Arizona citizens.

**5. Any parties which have not been served and an explanation of why they have not been served, and any parties which have been served but have not answered or otherwise appeared.**

Not applicable.

**6. A statement of whether any party expects to add additional parties to the case or otherwise to amend pleadings.**

The Thompsons reserve the right to, and may add any entities jointly involved with James River for the handling of the claim (ie, James River Group, Inc, etc.), Dr. Gear's insurance agents or brokers as parties to either this case or the State Court Action. The Parties reserve the right to seek leave to amend their pleadings if and when appropriate.

**7. A listing of contemplated motions and a statement of the issues to be decided by these motions.**

The Parties anticipate filing motions and cross-motions for summary judgment on the question of whether Defendants' claim against Dr. Gear in the underlying action is covered by the James River policy as a matter of law. The particular issues comprising the motions will likely include those summarized in section 3 of this report.

The Parties may also file additional motions, including those related to discovery and evidence, throughout the course of this litigation as appropriate.

**8. Whether the case is suitable for reference to a United States Magistrate Judge for a settlement conference or trial.**

The Parties do not consent to referring this case to a Magistrate Judge for a settlement conference or trial.

**9. The status of related cases pending before other courts or other judges of this Court.**

The State Court Action remains pending. It is anticipated judgment will be entered regarding approval of the Settlement Agreement and Assignment of Claims pursuant to A.R.C.P., Rule 54(b). It is further anticipated the Thompsons' counterclaims will remain at a stay in the State Court Action, presumably to be resolved in the case at bar.

**10. A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information, including the parties' preservation of electronically stored information and the form or forms in which it will be produced.**

The Parties do not foresee any significant issues with respect to the preservation, disclosure, and discovery of electronically stored information at this time. The Parties commit to following all procedures set forth in the Federal Rules of Civil Procedure and related authority and to attempting to resolve any such issues as they arise in good faith without court intervention.

**11. A discussion of any issues relating to claims of privilege or work product.**

The Parties do not foresee any significant issues with respect to the claim of privilege or work product at this time. The Parties commit to following all procedures set forth in the Federal Rules of Civil Procedure and related authority and to attempting to resolve any such issues as they arise in good faith without court intervention.

**12. A discussion of whether an order under Federal Rule of Evidence 502(d) is warranted in this case.**

The Parties do not anticipate the need for an order under Rule 502(d) at this time.

**13. A discussion of necessary discovery. This discussion should take into account the December 1, 2015 amendments to Rule 26(b)(1), and should include:**

**a. The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case;**

**b. Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure; and**

**c. The number of hours permitted for each deposition. The parties should consider whether a total number of deposition hours should be set in the case, such as 30 total hours for Plaintiff and 30 total hours for Defendants. Such overall time limits have the advantage of providing an incentive for each side to be as efficient as possible in each deposition, while also allowing parties to allocate time among witnesses depending on the importance and complexity of subjects to be covered with the witnesses.**

At minimum, the Parties anticipate conducting written discovery. The Thompsons anticipate taking James River's deposition through a designee or designees identified pursuant to F.R.C.P., Rule (30)(b)(6) regarding the formulation, underwriting, implementation, and interpretation of the exclusionary language at issue, claims handling policies and procedures, claims handling goals and incentives, and other matters related to the claim handling decisions in this case. The Thompsons also plan to depose James River's claim representative Misty Anderson and any other representative involved in the handling of the subject claim, directly or otherwise, and possibly a representative from Dr. Gear's

office  James River anticipates taking the deposition of Dr. Gear's insurance agent, among others. The Parties do not request any changes to the discovery limitations as set forth in the Federal Rules of Civil Procedure at this time.

**14. A statement of when the parties exchanged or will exchange Federal Rule of Civil Procedure 26(a) initial disclosures.**

The Parties commit to exchanging Rule 26(a) initial disclosure by July 23, 2021.

**15. Proposed specific dates for each of the following:**

In the interest of efficiency and economy, the Parties propose this action should be bifurcated so that the coverage issues are adjudicated before the Thompsons' bad faith and extracontractual claims and James River's rescission claim. This framework would potentially save the Parties and the Court significant time and resources. Counsel for the parties have spent significant time attempting to work through this proposed, bifurcated format and agree it makes sense. Should this Court not agree, the parties will promptly propose dates for whatever format the Court deems appropriate.

The Parties set forth their proposed deadlines below.

**Proposed deadlines for Phase 1 (all issues relating to the existence of coverage, including the Parties' claims for declaratory judgment, the Thompson's claim for breach of contract, and the Parties' defenses associated with these claims)**:

    **a.    A deadline for the completion of discovery;**

December 3, 2021

    **b.    Dates for full and complete expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(A)-(C);**

Initial expert disclosures: November 5, 2021

Rebuttal expert disclosures: December 20, 2021

    **c.    A deadline for completion of all expert depositions;**

January 14, 2022

    **d.    A date by which the parties shall have engaged in face-to-face good faith settlement talks;**

January 14, 2022

      **e.    A deadline for filing dispositive motions regarding coverage.**

The Parties separately propose slightly different briefing schedules for dispositive motions in Phase I. The Parties will readily abide by whichever schedule the Court deems more appropriate.

James River respectfully proposes the following briefing schedule:

    Dispositive Motions: January 14, 2022

    Response Memorandums: February 4, 2022

    Reply Memorandums: February 18, 2022

Defendants respectfully propose the following briefing schedule:

    Plaintiff's Motion for Summary Judgment: January 14, 2022.

    Defendants/Crossclaimants' Response and Cross-Motion for Summary Judgment: January February 4, 2022.

    Plaintiff's Response and Reply: February 25, 2022.

    Defendants/Counterclaimants' Reply: March 6, 2022.

**The Parties will submit proposed scheduling deadlines for Phase 2 (all issues relating to bad faith and extracontractual exposure, including the Thompsons' claims for bad faith and punitive damages, James River's rescission claim, and all defenses associated with these claims) upon the adjudication of coverage, if Phase 2 is necessary.**

    **16.    Whether a jury trial has been requested and whether the request for a jury trial is contested.**

A jury trial has been requested and is not being contested at this time.

    **17.    The prospects for settlement, including any request of the Court for assistance in settlement efforts.**

The Parties voluntarily submitted to mediation in August 2020. Despite their good-faith efforts, a settlement was not reached. The prospects for settlement at this moment are

low, but the Parties commit to continuing to explore the possibility of settlement as opportunities arise during the course of this litigation.

**18. Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.**

Defendants/Counterclaimants have propounded draft discovery and Rule 30(b)(6) depositions upon Plaintiff. Counsel for the parties anticipate meeting and conferring to determine whether there are any significant and foreseeable discovery disputes within 30 days. Notwithstanding, neither Party waives any right to object to any discovery request at the appropriate time and in due course throughout the pendency of this action.

**RESPECTFULLY SUBMITTED** this 2nd day of July, 2021.

| | |
|---|---|
| Beale, Micheaels, Slack & Shughart | /s/JOEL MCNABNEY |
| | **JOEL L. MCNABNEY** (*admitted pro hac vice*) |
| By: /s/ David S. Shughat | Florida Bar No. 106507 |
| John A. Micheaels, Esq. | joel.mcnabney@clydeco.us |
| David S. Shughart, Esq. | |
| 7012 North 18th Street | Clyde & Co US LLP |
| Phoenix, Arizona 85020 | 1221 Brickell Avenue |
| *Attorneys for Defendants/* | Suite 1600 |
| *Counter-Plaintiffs* | Miami, Florida 33131 |
| | T: 305.446.2646 |
| | |
| | and |
| | |
| | Jasmina Richter/Bar No. 024180 |
| | SANDERS & PARKS, P.C. |
| | 3030 North Third Street, Suite 1300 |
| | Phoenix, AZ 85012-3099 |
| | Direct Phone: (602) 532-5779 |
| | jasmina.richter@sanderspark.com |
| | *Attorneys for Plaintiff and Counter-Defendant* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF on this 2nd day of July, 2021 on all counsel or parties of record on the Service List below.

/s/JOEL MCNABNEY
**JOEL L. MCNABNEY**

**SERVICE LIST**

John A. Micheaels, Esquire
Email: jam@bmsslaw.com
David S. Shughart, Esquire
Email: dshughart@bmsslaw.com
Beale, Micheaels, Slack & Shughart
7012 North 18th Street
Phoenix, Arizona 85020
Telephone: (602) 285-1444
*Attorneys for Intervenors Wendee Thompson,
Mildred Salter, and Joseph Thompson*