**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James River Insurance Company, | No. CV-20-01052-PHX-DGC |
| Plaintiff/Counterdefendant, | **ORDER** |
| v. | |
| Wendee Thompson; Mildred Salter; and Joseph Thompson, | |
| Defendants/Counterclaimants. | |

Plaintiff James River Insurance Company issued a medical professional liability policy to Dr. Phillip Gear. Defendant Wendee Thompson and her parents, Joseph and Mildred, sued Dr. Gear in state court, asserting a medical malpractice claim based on Dr. Gear's alleged failure to diagnose and provide appropriate care for Wendee's pregnancy, which resulted from sexual abuse at a long-term care facility. *See Thompson v. Gear*, No. CV2019-057584 (Maricopa Cty. Super. Ct. Dec. 24, 2019). Dr. Gear assigned to Defendants his rights under the policy pursuant to a *Morris* agreement. *See* Doc. 17 at 2; *United Servs. Auto. Ass'n v. Morris*, 741 P.2d 246 (Ariz. 1987).[1]

---

[1] When Plaintiff refused to settle Defendants' tort claim for the $1 million policy limit, Dr. Gear settled with Defendants and agreed to entry of a $15 million judgment. The state court has found the $15 million to be a reasonable settlement amount. *See* Docs. 64 at 5, 72 at 2.

Plaintiff brought this declaratory judgment action to establish that the policy provides no coverage for Defendants' tort claim against Dr. Gear. Docs. 1, 56. Plaintiff claims in part that the policy's "sexual act" exclusion bars coverage for Defendant's tort claim against Dr. Gear. Doc. 56 ¶¶ 31-35 (Count I). Defendants have filed counterclaims for declaratory relief, breach of contract, and bad faith. Doc. 60.

On October 13, 2021, the Court issued an order resolving the parties' dispute about the scope of Phase 1 discovery – specifically, whether extrinsic evidence may be considered in deciding coverage issues. Doc. 79.[2] The Court concluded that, subject to other appropriate objections, Defendant may discover relevant extrinsic evidence regarding the meaning and application of the policy's sexual act exclusion, including other claims involving the exclusion. Doc. 79 at 13.

Plaintiff has filed a motion for reconsideration, arguing that "other claims" discovery should be denied because it is irrelevant to the coverage issue and protected from disclosure by certain privileges and the privacy rights of other insureds. Doc. 89 at 1-11. Plaintiff further argues that the discovery would be unduly burdensome and disproportionate to the needs of the case. *Id.* at 11-13. Defendants have filed a response. Doc. 96.

For reasons stated below, the Court will deny the motion with respect to Plaintiff's relevance, privilege, and privacy arguments. The Court finds that further argument on the appropriate scope of "other claims" discovery is necessary. That issue will be addressed at the telephonic hearing now scheduled for December 13, 2021. *See* Doc. 109 at 1. Before the hearing, the parties shall attempt to resolve the dispute over the scope of discovery through personal consultation and sincere effort. *See* Doc. 65 at 3; LRCiv 7.2(j).

///

///

---

[2] Phase 1 is limited to coverage issues raised in the complaint and counterclaims. *See* Docs. 64 at 10, 65 at 10. If a finding of coverage is made during Phase 1, Phase 2 will include Plaintiff's rescission claim and Defendants' bad faith claim and request for punitive damages. *See id.*

**I.     The Sexual Act Exclusion and the Phase 1 Discovery Dispute.**

Plaintiff claims that the sexual act exclusion bars coverage for Defendant's tort claim against Dr. Gear. Doc. 56 ¶¶ 31-35. That exclusion states that the policy does not apply to any claim:

> Based on or directly or indirectly arising out of or resulting from any sexual act or acts including but not limited to undue familiarity, excessive influence or power, molestation, assault, battery or harassment, including "claims" of improper or negligent hiring, employment or supervision, failure to protect or warn the other party, failure to prevent the sexual abuse and/or physical abuse, failure to prevent assault and battery and failure to discharge the employee[.]

*Id.* ¶ 29 (quoting policy § I.2.e). Plaintiff alleges that this exclusion bars coverage for the claim against Dr. Gear because that claim is based on, directly or indirectly arises out of, or results from the sexual assault of Wendee Thompson. *Id.* ¶ 34; *see id.* ¶¶ 19-23; Doc. 60 at 57-58.

Defendants contend that the sexual act exclusion does not bar coverage because Dr. Gear never sexually assaulted Wendee and the claim against him alleges only medical malpractice – his failure to diagnose Wendee's pregnancy and to provide prenatal and other appropriate medical care. Doc.75 at 5; *see also* Docs. 60 at 6-7, 19-25; 64 at 6.

In the parties' joint case management report, Defendants made clear that they intend to conduct Phase 1 discovery regarding the interpretation and application of the sexual act exclusion. Doc. 64 at 8. Plaintiff agreed to a discovery period for Phase 1. *See id.* at 9. Defendants seek to discover information on how the sexual act exclusion has been interpreted and applied to claims by other insureds. In this regard, Defendants have served the following discovery requests on Plaintiff:

> **Interrogatory No. 4:** Please identify by insured name, claim number, and date of loss any claim for which you have denied coverage based upon the Sexual Act Exclusion in the past 10 years.
>
> **Interrogatory No. 5:** Please identify by insured name, claim number, and date of loss any claim in the past 10 years for which James River denied coverage based upon the Sexual Act Exclusion to any insured healthcare

3

provider who was not alleged to have been the actual perpetrator (or employee, employer, supervisor, agent, or other principal of the perpetrator) of a sexual act against the claimant or plaintiff.

**Interrogatory No. 6:** Please identify by case caption, jurisdiction, tribunal, case number, and parties' names all cases, litigation, and/or legal disputes involving James River in which the Sexual Assault Exclusion has been asserted, applied, interpreted, litigated, and/or otherwise addressed.

**Request for Production No. 1:** Produce all documents related in any way to your responses to the foregoing interrogatories.

**Request for Production No. 8:** Produce all documents (subject to appropriate redactions for privacy information) related to any claims, cases, or matters identified in response to Interrogatory No. 5 and Interrogatory No. 6 set forth above.

*See* Doc. 72 at 138-39, 143, 150.

In August 2021, the parties informed the Court that they had a dispute regarding the scope of Phase 1 discovery.  Doc. 68.  A telephone conference was held on September 1.  Doc. 71.  The parties thereafter filed briefs addressing: (1) what evidence a court may consider in deciding what is covered by an insurance policy; (2) what additional information the reasonable expectations doctrine makes available for a court to consider in deciding coverage issues; and (3) what additional information a court may consider when a policy provision is ambiguous.  *See* Docs. 71-75.  Defendants argued that the extrinsic evidence they seek regarding the sexual act exclusion is relevant to coverage issues and discoverable under Arizona law and Federal Rule of Civil Procedure 26(b)(1).  Doc. 72 at 3-10.  Defendants provided the following examples of extrinsic evidence that may be relevant to the meaning of the sexual act exclusion: "drafting history of the [exclusion], instructions to sales personnel on how to market and sell the policies, underwriting files of the insured and/or similarly situated insureds, claim files of the insured and similarly situated insureds, and identification of testimony from insurance company representatives involving similar coverage issues."  *Id.* at 7.  Plaintiff countered that no discovery of extrinsic evidence is warranted because the only facts relevant to a coverage determination are the policy itself and the underlying complaint.  Doc. 73 at 1-4.

4

The Court found that: (1) relevant extrinsic evidence, including other claims involving the sexual act exclusion, may be considered in interpreting the exclusion, *see Taylor v. State Farm Mut. Auto Ins.*, 854 P.2d 1134, 1138 (Ariz. 1993); (2) under Arizona's reasonable expectations doctrine, evidence on the surrounding circumstances of the transaction may be considered in determining the parties' understanding, *see Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 396-97 (Ariz. 1984); *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283-84 (Ariz. 1987); and (3) ambiguity in the sexual act exclusion need not exist for the Court to consider extrinsic evidence of the parties' intent, *see Taylor*, 854 P.2d at 1140; *State Farm Mut. Auto. Ins. Co. v. Wilson*, 782 P.2d 727, 733 (Ariz. 1989). Doc. 79 at 3-13.

## II. Reconsideration Standard.

Motions for reconsideration are disfavored and rarely granted. *See Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988); *Resolution Tr. Corp. v. Aetna Cas. & Sur. Co.*, 873 F. Supp. 1386, 1393 (D. Ariz. 1994). A motion for reconsideration will be denied absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence. LRCiv 7.2(g)(1); *see United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). The motion may not repeat previously made arguments, and mere disagreement with an order is an insufficient basis for reconsideration. *See id.*; *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003); *Ross v. Arpaio*, No. CV 05-4177-PHX-MHM, 2008 WL 1776502, at *2 (D. Ariz. 2008).

## III. Plaintiff's Motion for Reconsideration.

As noted, Plaintiff argues that "other claims" discovery is irrelevant to the coverage issue, protected by privileges and the privacy rights of other insureds, unduly burdensome, and disproportionate to the needs of the case. Doc. 89.

/ / /

/ / /

5

### A. Relevance.

Plaintiff does not claim that the Court committed manifest error in resolving the parties' discovery dispute. *See* LRCiv 7.2(g)(1). Plaintiff instead contends that the arguments and legal authority presented in its motion for reconsideration could not have been brought to the Court's attention earlier "[g]iven the page and issue limitations in the briefing scheduling leading up to the Court's Order." Doc. 84 at 4 n.1.

But Plaintiff never moved to exceed the page limits. And whether extrinsic evidence – including claims of other insureds – is relevant in interpreting the sexual act exclusion was one of the issues to be addressed in the earlier briefing. The Court specifically directed the parties to address "what evidence a court can consider in deciding what is covered by an insurance policy[.]" Doc. 71 at 1.

Plaintiff argued that extrinsic evidence is irrelevant because Arizona courts apply the "eight corners" rule in determining whether coverage exists – that is, "the Court need only look at the 'four corners' of the policy and the 'four corners' of the complaint." Doc. 73 at 3-4. The Court rejected that argument because the cases Plaintiff cited primarily involve the duty to defend, not coverage issues, and Arizona law clearly permits consideration of relevant extrinsic evidence in interpreting policy language. Doc. 79 at 5-6 (citing *Taylor*, 854 P.2d at 1139 ("To understand the agreement, the judge cannot be restricted to the four corners of the document. Again, even under the Corbin view, the court can admit evidence for interpretation[.]")); *see also Maricopa Cty. v. Ariz. Prop. & Cas. Ins. Guar. Fund*, No. 2 CA-CV 98-0076, 2000 WL 35937314, at *1 (Ariz. Ct. App. Apr. 27, 2000) ("This appeal raises issues of interpretation and applicability of the 'pollution exclusion' in . . . insurance policies. We conclude that, in ruling on those issues, the trial court erroneously refused to consider extrinsic evidence[.]"); *Nammo Talley Inc. v. Allstate Ins. Co.*, 99 F. Supp. 3d 999, 1004 (D. Ariz. 2015) ("The *Taylor* court emphasized that . . . a judge should consider parol evidence to define contractual terms because a 'court's proper and primary function' is to enforce the meaning intended by the contracting parties.") (quoting *Taylor*, 854 P.2d at 1140); *Goldberg v. Pac. Indem. Co.*, No.

CV05-2670-PHX-JAT, 2008 WL 508495, at *13 (D. Ariz. Feb. 21, 2008) (considering "extrinsic evidence put forth by Plaintiffs – Pacific's insurance manuals, testimony of Pacific's representatives, and expert testimony" – to interpret a coverage provision); *Nelson v. Zurich Am. Ins. Co.*, No. 2:06CV1254-HRH, 2007 WL 9723965, at *2 (D. Ariz. Mar. 9, 2007) ("The parties' intent is relevant to the interpretation of an insurance contract. In discerning what the parties intended the court may consider extrinsic evidence.") (citing *Taylor*, 854 P.2d at 1138); *Federico v. Cont'l Cas. Co.*, 52 F.3d 332, 332 (9th Cir. 1995) ("According to Arizona law, a court may look to extrinsic evidence to determine the parties' intent in forming the contract.") (citing *Darner*, 682 P.2d at 398).

      Plaintiff now argues that courts regularly deny attempts by insureds to obtain "other claims" discovery because it is irrelevant to coverage issues. Doc. 89 at 5-10 (citations omitted). Plaintiff should have made this argument in its earlier briefing. The discovery requests at issue specifically seek information about other claims involving the sexual act exclusion. *See* Doc. 72 at 138-39, 143, 150. Defendants argued in their initial brief that claim files of similarly situated insureds are relevant to the interpretation of the sexual act exclusion. *Id.* at 7; *see id.* at 10 (Plaintiff's "handling of other claims involving the exclusion" is relevant and discoverable). In support, Defendants cited *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 106-07 (D.N.J. 1990), which held that claims of other insureds with identical policy language "is relevant for purposes of discovery since it may show that identical language has been afforded various interpretations by the insurer . . . [and] that the interpretations suggested by the [insurer] today are not the same as those of the original drafters." *See* Doc. 72 at 7. Plaintiff acknowledged in its response brief that Defendants seek discovery of "claims involving other insureds[,]" but failed to address Defendants' argument that such claims are relevant to show how Plaintiff has interpreted and applied the sexual act exclusion. *See* Doc. 74 at 5 (claiming only that the "breadth of discovery" serves no other purpose than to "troll the depths of [Plaintiff's] operations in the hopes of cobbling together a claim or defense that does not exist").

7

Plaintiff cites a few California cases for the proposition that opinions and admissions of a claims adjuster cannot create coverage that does not exist under the policy. Doc. 89 at 6-7 (citing *Chatton v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 846, 865 (1992); *Jordan v. Allstate Ins. Co.*, 116 Cal. App. 4th 1206, 1218 (2004); *Prudential Ins. Co. v. Sup. Ct.*, 98 Cal. App. 4th 585, 603 (2002)). But "[w]hile a claims adjuster cannot bind the insurance company for a loss not covered under the policy, how [the] adjusters have applied the policy to other insured parties is relevant [to coverage]." *Nelson*, 2007 WL 9723965, at *3; *see also* Doc. 79 at 10-12 (citing *Rembrandt Enters., Inc. v. Ill. Union Ins. Co.*, No. 15-CV-2913 (RHK/HB), 2016 WL 6997108, at *2 (D. Minn. Jan. 13, 2016) ("When a court will be tasked with interpreting an insurance policy, 'documents regarding similar claims of other insureds . . . 'are relevant and discoverable.'"); *Nat'l Union Fire Ins. Co. of Pitt., Pa. v. Stauffer Chem. Co.*, 558 A.2d 1091, 1095 (Del. Super. Ct. 1989) (finding that other claims "are relevant to the determination of ambiguity and should be the subject of discovery")).

Plaintiff provides no basis for the Court to reconsider its ruling that other claims involving the sexual act exclusion are relevant to the coverage issue. Plaintiff's motion will be denied in this regard.

**B.  Privilege.**

According to Plaintiff, its claim files and litigation materials contain substantial attorney-client privilege information as well as material protected by the work product doctrine. Doc. 89 at 10. Plaintiff asserts that because Defendants seek privileged matter, Plaintiff "is not required to respond to this discovery under the Federal Rules of Civil Procedure." *Id.* Even a casual reading of those rules would reveal, however, that Plaintiff's position is plainly incorrect.

Plaintiff cannot plausibly contend that every document and every communication in its claims files is privileged or work product. And the federal rules specifically state that if a party objects to portions of a Rule 34 document production, it must "permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). The rules further provide that documents withheld

as privileged must be identified in a privilege log: "the party must: (i) expressly make the claim; and (ii) describe the nature of the documents [and] communications . . . not produced or disclosed – and do so in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). Thus, the Federal Rules of Civil Procedure clearly require Plaintiff to produce non-privileged documents and list the rest in a privilege log. Plaintiff has done neither. Plaintiff's motion will be denied with respect to its privilege argument.[3]

**C.     Privacy.**

Plaintiff asserts that under A.R.S. § 20-2113, Arizona's constitutional right to privacy extends to information about insureds possessed by insurance companies. Doc. 89 at 10. Section 20-2113 imposes certain limitations on an insurance company's disclosure of "personal or privileged information about an individual collected or received in connection with an insurance transaction[.]" A.R.S. § 20-2113. For purposes of this statute, an "insurance transaction" is limited to a transaction that "involves insurance primarily for personal, family or household needs *rather than business or professional needs*[.]" A.R.S. § 20-2102(14) (emphasis added). Section 20-2113 does not apply in this case because the policy issued to Dr. Gear is a "medical professional liability policy." Doc. 56 ¶ 24. What is more, § 20-2113 allows disclosure of otherwise protected information if permitted or required by law, or pursuant to a court order. A.R.S. § 20-2113(7)-(8); *see* Doc. 96 at 8.

Plaintiff cites two cases in support of its privacy argument, but those cases have nothing to do with § 20-2113 or the discovery of insurance claim files. *See City of Phoenix v. Peterson*, 462 P.2d 829 (Ariz. Ct. App. 1969) (allowing discovery of a police officer's disciplinary proceedings despite an alleged common law confidentiality of public records); *San Francisco v. Super. Ct. of San Francisco*, 238 P.2d 581 (1951) (addressing the public

---

[3] Defendants have made clear that they do not seek information protected by a valid attorney-client privilege or the work product doctrine. Doc. 96 at 7-8. The parties shall work together in good faith to resolve this issue. *See id.*

9

policy favoring protection of a municipality's compliance with a written confidentiality agreement).

Plaintiff has not shown that § 20-2113 bars the "other claims" discovery sought by Defendants. Plaintiff's motion will be denied with respect to its privacy argument.[4]

### D.     Scope of "Other Claims" Discovery.

Plaintiff argues that the discovery Defendants seek is unduly burdensome and disproportionate to the needs of the case. Doc. 89 at 11. Plaintiff provides a declaration of one its claims managers, Misty Anderson, in support of this argument. Doc. 89-1.

Ms. Anderson states that Plaintiff has no computer database or software program that would enable Plaintiff to search its claim and litigation files for the sexual act exclusion "in a simple manner." *Id.* ¶ 5. She further states that using Plaintiff's "claims management information systems" to search for the discovery would be difficult, time consuming, expensive, and burdensome. *Id.* ¶ 7. More specifically, she asserts:

> [Plaintiff's] claim systems do[] not have a field that requires claims adjusters to input information related to the specifics of a coverage dispute or policy language dispute. There is no "field organizer" that enables [Plaintiff] to isolate all "Sexual Assault Exclusion" claims. [Plaintiff's] claim system also does not have a field that enables claim adjusters to input that information related to the specific issue of coverage.

*Id.* According to Ms. Anderson, more than 2,500 claim files would have to be manually reviewed, "top to bottom," to respond to the discovery requests. *Id.* ¶¶ 8, 12. She further claims that the search for litigation files would be even more difficult and time consuming. *Id.* ¶¶ 10-11.

Defendants counter that an explanation of the nature and capabilities of Plaintiff's "claims management information systems" is missing from Plaintiff's motion and Ms. Anderson's declaration. Doc. 96 at 10. Defendants assert that Plaintiff has failed to show that there is no way to identify relevant claim files. *Id.* at 10-11. Defendants propose a

---

[4] While Defendants oppose Plaintiff's motion, they do not object to appropriate redactions for personal or private information contained in other claim files and litigation materials. *See* Doc. 96 at 8-9 n.2.

10

Rule 30(b)(6) deposition of Ms. Anderson or another representative so that Defendants may discover whether and how the claim files may be located. *Id.* at 11.

Defendants also argue that that the "other claims" discovery is proportional to the needs of the case considering the factors set forth in Rule 26(b)(1) – the importance of the issues at stake, the amount in controversy, the parties' resources and relative access to the information, the importance of the discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit. *Id.* at 9. Defendants note that the meaning of the sexual act exclusion is the primary issue in Phase I and that millions of dollars are at stake. *Id.* Defendants further assert that Plaintiff is a large, well-funded insurance company with vast resources and exclusive access to its claim files. *Id.* According to Defendants, discovery of other claim files is necessary because Plaintiff essentially has claimed that no one in the company has knowledge about the creation of the sexual act exclusion and no document sheds light on this issue. *Id.* at 9-10.

The Court finds that further discussion on the appropriate scope of "other claims" discovery will be helpful. Instead of requiring Plaintiff to file a reply brief on that issue, *see* LRCiv 7.2(g)(2), the issue will be discussed at the December 13 hearing on privilege log issues. *See* Doc. 109. Before the hearing, the parties shall engage in good faith efforts to resolve or narrow their dispute over the scope of this discovery.

**IT IS ORDERED** that Plaintiff's motion for reconsideration is **denied** with respect to its relevance, privilege, and privacy arguments (Doc. 89 at 1-11). Plaintiff's arguments that the discovery sought is burdensome and disproportionate will be addressed at the hearing on **December 13, 2021 at 3:00 p.m.** *See* Doc. 109.

Dated this 6th day of December, 2021.

David G. Campbell
Senior United States District Judge

11